## William McFarlin *vs.* The Essex Company.

If a several right of fishery on the land of another can be acquired by prescription, it must be by an actual and exclusive occupation and enjoyment of the fishery, adverse to the riparian proprietor, and continued for at least twenty years.

An adverse occupation by A. for a number of years, but afterwards abandoned, cannot be added to a subsequent occupation by B. to give B. a prescriptive right, although A., after such abandonment, released all his right in the fishery to B.

An occupation of a fishery for several years by B. in the employment of A. cannot give B. any prescriptive rights against C., although A. himself claims adversely to C.

APPEAL from the judgment of the court of common pleas, accepting the verdict of a sheriff's jury awarding damages to the petitioner for injury to his fishing privilege by the respondents.

The petition set forth that the respondents erected and maintained a dam across the Merrimack River, at Lawrence, without making any fish ways therein, contrary to their charter, *St.* 1845, *c.* 163, § 5, and thereby obstructed the passage of fish up said river to the petitioner's fishing-place, about twelve miles above said dam, at the head of Pawtucket Falls, in Lowell; and he claimed damages before the county commissioners, and afterwards by appeal to a sheriff's jury, as provided by *St.* 1848, *c.* 295, § 1.

At the hearing before the sheriff's jury, the respondents did not deny their liability for the injury, if any, to the petitioner's rights, but contended that the petitioner had no legal right of fishery, as alleged in his petition; and this was the main question involved in the case. The petitioner did not claim the right to the soil and freehold at the place of his alleged fishery but conceded that the same belonged to the Proprietors of Locks and Canals, a corporation, but he claimed under an adverse user and possession for more than twenty years; and he introduced evidence tending to show, that one Micajah Bowers went upon the rock, which constitutes the fishing-place, about the year 1814, and fished upon it during the fishing season, until the spring of 1819, when he abandoned the place, and never afterwards exercised any control over it. Said Bowers

never had any documentary title to said fishing-place, from any person, but in May 29, 1844, he relinquished all his right therein, if any, to the petitioner.   The petitioner also introduced evidence tending to show, that in 1819, after said Bowers abandoned the fishing-place, one Archibald McFarlin, his father, entered upon said fishing rock, and that he, together with the petitioner and another minor son of said Archibald, continued to fish there every year, until the fishery was destroyed by the dam of the respondents in June, 1847.   Said Archibald put a bolt and a ring into the rock, and set a pot there.   Said Archibald never had any paper title to said fishing place, although he also, on the 21st November, 1847, released to the petitioner all his right to said fishery.

The respondents offered some evidence tending to disprove an exclusive occupation of said fishing-place, by said Bowers and Alexander McFarlin, but the jury found on this point that the petitioner, and those under whom he claimed, had been in the exclusive occupation of the fishery for more than twenty years.

For the respondents, Elisha Ford testified that this was only a temporary fishing-place until 1828, when the Proprietors of Locks and Canals erected a dam above, to the advantage of the fishing-place.   He also said that, in 1828, the water being low, " I, with William and Archibald McFarlin, took a pole and hauled it on to the Falls, and, swinging it on to the fishing-place in question, built a staging.   We took my nets and machinery and put them upon the place.   At this time William McFarlin was a boy, and fishing for me. The next year William fished the place and my other places at the halves.   Afterwards, William and Luke McFarlin carried on this and my other fishing-places.   They had two thirds, and I one third.   We divided in this way for several years.   After this a difficulty arose.   When we went on, there was no pot in the fishing-place.   My pot was put in by building a temporary wooden dam.   I found the iron-work for the dam.   It was not built till the second year after we went on to it.   I considered my claim to the premises to be subject to the Proprietors of Locks and Canals.   My right

26*

was never denied by the McFarlins up to the time they drove me off, about ten years ago.   I claimed by possession against all other fishermen, but not against the Locks and Canals. The structures were carried off every season pretty much."

The respondents introduced evidence tending to show, that the bed of the river and the falls, in and upon which said fishery was situated, was the property of the Proprietors of Locks and Canals, who had been in possession of the same under deeds of warranty twenty-five years, and that they had, at different times, erected and extended a dam upon said falls, just above said fishery, during and since the year 1828, and had annually, since the year 1828, controlled the water running in said river above the fishery at their pleasure; which control affected the petitioner's fishery, rendering it useful, or destroying it, as the water was made low or high, around and upon it; and there was no evidence that any objection had been made to the aforesaid operations of said Proprietors; and on the 19th of April, 1847, they forbid the petitioner from entering on their premises, or fishing at said place.

No evidence was offered by the petitioner that he or any other person occupying said fishery, ever owned any land upon the banks of the Merrimack River, or any land elsewhere to which this fishery could be regarded as appurtenant.   And the petitioner's counsel stated, that the petitioner had no right in the soil of the fishery, except for the purpose of catching fish, or in any land to which it was or could be attached, or regarded as appurtenant; but that he claimed only the right to fish upon the fishing-place, which claim was founded entirely upon possession, use, and occupation.

The respondents upon these facts contended, and asked the sheriff to rule, 1. That the owners of the land traversed by Merrimack River, had the exclusive right of fishery therein, upon their own soil, subject only to such restraints as the government may impose, and that the petitioner, upon the facts shown, did not show any title to the fishery, either by custom, prescription or disseisin, or that it was claimed as appurtenant to any estate.

2. That there was no such occupation and use of the fishery prior to 1828, as indicated any intention of claiming any prop‹ erty therein.

3. That the use and occupation of the fishery as proved, even if it extended to twenty years, did not amount to a disseizin, especially when viewed in connection with the use of the water by the Proprietors of Locks and Canals.

4. That the notice of the Proprietors of Locks and Canals was effectual to bar the right of the petitioner, and all other parties and privies to the fishery, and to prevent their acquiring any title thereto.

5. That before the petitioner, or those under whom he claims, had held the fishery adversely twenty years, it was destroyed.

6. That the petitioner cannot make a title under the deed of Micajah Bowers, because he abandoned the premises in 1819; nor under the deed of Archibald McFarlin, dated November, 1847, because the fishery had ceased to exist in July, 1847.

7. That the petitioner's deed is dated after the fishery was destroyed, at which time Archibald McFarlin had nothing that he could convey.

The sheriff declined so to instruct the jury, but did instruct them that the interest or right of the petitioner in and to the fishing privilege, alleged to have been damaged by the construction of the respondents' dam, having been drawn in question, and they having heard the evidence relating thereto, it was for them to determine such question of interest or right, so far, only, as respects the damages of the petitioner. The jury returned their verdict in favor of the petitioner, into the court of common pleas, and *Perkins*, J. ordered the same to be accepted and allowed. The respondents appealed to this court.

*J. P. Robinson*, (*D. S. Richardson* with him,) for the petitioner cited *Melvin* v. *Whiting*, 7 Pick. 79; 10 Pick. 295; 13 Pick. 184.

*T. Wentworth*, for the respondents.

SHAW, C. J. This case comes before this court by appeal from a judgment of the court of common pleas, accepting the

verdict of a sheriff's jury, by which such jury awarded dam-
ages to the petitioner, for the alleged loss of a fishing right or
privilege, occasioned by the erection of a dam at Lawrence,
across the Merrimack River, by the Essex Company.   By an
act of the legislature, *St.* 1845, *c.* 163, the Essex Company
were incorporated with a right to erect a dam across Merri-
mack River, to create a large water power for manufacturing
purposes; they were required to make suitable fish ways in
said dam, to the satisfaction of the county commissioners.
By a subsequent act passed in May, 1848, *St.* 1848, *c.* 295,
an additional privilege was granted to said Essex Company,
provided that said company should be liable for all damages
occasioned to the owners of fish rights, existing above said
company's dam, by the stopping or impeding the passage of
the fish up and down said river by said dam.   This last act
was to take effect when its provisions should be accepted by
the company.   It does not appear affirmatively that the last
act was accepted; but as the contrary does not appear, and
both parties have considered the case upon the assumption that
both of these acts were in force, we take it for granted that it
has been accepted.   The last act provides that the damages,
to which the company shall be liable for the stopping or im-
peding the passage of fish, to the owners of fish rights, shall
be assessed by the county commissioners; and either party
dissatisfied may apply for a jury, as provided in *c.* 24 of the
Revised Statutes, respecting the recovery of damages in lay-
ing out highways.

It is to be regretted that no mode is provided by which the
right of any person claiming a fish right on the river above,
can be put in issue, tried, and decided, before a warrant issues
to assess the damages.   After such right has been decided in
favor of such complainant, both upon the question of law, and
also upon the facts on which such right depends, an inquest by
a sheriff's jury may be a very proper mode of ascertaining the
damages to which a view of the premises may be useful and
often very important.   But in a case like the present, the duty
of the commissioners, on being applied to for a warrant for a
jury, seems to be rather ministerial than judicial, and the war-

rant goes as of course. The first opportunity which the re-spondent has to deny and put in issue the complainant's right to any damages, is before the jury when impanelled and presided over by the sheriff. There, every question of law, as well as every question of fact, on which the right and its vio-lation depends, is to be offered on one side and contested on the other; and there it must be tried and decided, as all mat-ters of right are decided, the law to be declared by the acting judge or presiding officer, subject to revision, and the facts to be decided by the jury, under necessary and correct instruc-tions in matter of law.

In the present case the complainant claimed an exclusive right to a fishery on Pawtucket Falls, near the dam of the Proprietors of Locks and Canals, and the facts on which his claim is founded are set forth in a certificate or bill of ex-ceptions, authenticated by the signature of the sheriff, and filed by him with the verdict, in the court of common pleas. Upon this bill of exceptions several things very material are stated. It is stated that the complainant does not claim a right of fishery in virtue of being a proprietor, or heir of any proprietor, of land bounding on the river; and it is distinctly admitted that no deed or grant in writing was ever made to McFarlin, the father, or to the complainant, from any riparian owner of land bounding on the river. His sole title, therefore, and so it was stated by the counsel, was for a fishery on and over the land of another, acquired by prescription; not a fishery appendant to any estate, but an incorporeal hereditament.

It is now perfectly well established as the law of this com-monwealth, that in all waters not navigable in the common-law sense of the term, that is, in all waters above the flow of the tide, the right of fishery is in the owner of the soil upon which it is carried on, and in such rivers that the right of soil is in the owner of the land bounding upon it. If the same person owns the land on both sides, the property in the soil is wholly in him, subject to certain duties to the public; and if different persons own the land on opposite sides, each is pro-prietor of the soil under the water, to the middle or thread of

the river. *Case of the River Banne*, Sir John Davies's R. 149;
*Waters* v. *Lilley*, 4 Pick. 145; *Commonwealth* v. *Chapin*, 5 Pick.
199. This is recognized in many cases as the common right
of riparian proprietors, subject, in Massachusetts, to regulation
for the common benefit, by the legislature.

It being admitted that neither the complainant, nor any per-
son under whom he claims, has, or ever had, any property in
land adjoining the river, the right of fishery, *primâ facie*, is in
the riparian proprietors, and the complainant has the burden of
proof to show some title derived from, or adverse to them; the
presumption is against him. *Carter* v. *Murcot*, 4 Bur. 2162.
Whether a party can prescribe for a several fishery in the
estate of another, without alleging some estate of freehold, is
an important question, which was not discussed in the present
case, though very important should it be tried again. As a
general rule, a party cannot allege a custom to claim an in-
terest or *profit à prendre* in the estate of another, without a
prescription in a *que estate*. *Grimstead* v. *Marlowe*, 4 T. R.
717, recognizing the authority of *Gateward's case*, 6 Co.
59, *b*. This rule was applied in this commonwealth to the
case of a fishery, on the soil of a riparian proprietor in a
stream not navigable, in which Parker, C. J. in giving the
opinion of the court said, " that if such a right (the right to
take any thing from another's land) is available at all, it must
be set up by prescription as belonging to some estate, and
should be pleaded with a *que estate*." And yet we believe it
has sometimes been said that " Piscary " is a freehold in itself,
in which there is no occasion to show to what freehold it is
appendant. See a case cited by way of illustration, in the
above case from Sir John Davies, 151.

But we express no opinion upon this question without the
aid of an argument, and need add nothing more than to say,
that the cases of *Melvin* v. *Whiting* afford no authority for
claiming such a right by prescription, without reference to an
estate, to which it was alleged to be appendant. Perhaps a dif-
ferent impression might be made by the first sentence in the
second of those cases, 10 Pick. 295, which we think is plainly a

misprint. It was trespass by *Melvin* v. *Whiting*, for the destruc-tion of his exclusive fishery, in Merrimack River, in front of the "*plaintiff's*" lot; the whole context shows that this should have been "*defendant's.*" The plaintiff had no occasion to sue in case, for an injury to his fishery in front of his own land; the soil under the water was his own, and trespass *quare clausum* was a complete and ample remedy. And in the anterior case, between the same parties reversed, a still prior judgment is recited, in which Melvin had pleaded that he was seised in fee of land on the bank of Merrimack River, and had by pre-scription a free fishery in the part of the river fronting Mel-vin's land, &c., and offered proof, &c., and the jury found that he, and those whose estate he had, &c.—*i. e.* land on the bank of the river—have been used and accustomed to fish, &c., at their free will and pleasure, and still of right ought to fish, &c. And in the subsequent case of *Melvin* v. *Whiting*, 13 Pick. 184, nothing is stated inconsistent with the fact that Melvin claimed the fishery in Whiting's land, as appendant to his own estate in fee, as held by himself and his ancestors. But without going further into this question, and assuming that it would be open to the complainant to prove, if he could, a title by prescription, by adverse use and enjoyment, for a certain time, we think that the verdict in the present case cannot be supported, for several reasons.

In any mode of putting his case, as a title to the fishery by use and adverse enjoyment, it was incumbent on the com-plainant to prove satisfactorily an actual and exclusive pos-session of the fishery, adverse to the right of the riparian pro-prietors, that is, adverse in the sense of not being permissive, but on the contrary, against their interest; uninterrupted, and continued at least twenty years; and the sheriff should have directed the jury as to the nature and character of such ex-clusive and adverse possession, and the evidence competent to prove it. The testimony of Micajah Bowers, of his use of the fishery from 1814 to 1819, together with his deed, exe-cuted many years afterwards, should have been ruled either not admissible, or else the jury should have been instructed

that, if according to his own testimony, at the expiration of five years, he abandoned it, it was no possession of which the complainant could avail himself; that his deed of 1844 could have no effect, because at the time he gave it, he had no right, or color of right, and nothing that he could release or convey. The testimony of Ford should have been left to the jury, with directions, that if he carried on the fishery, on the fishing-place in question, one, two, or three years, on his own account, or if he employed and paid the complainant one or more seasons, and if the McFarlins worked under him, and took the place of him on shares, it was an interruption of the continuity of adverse possession, which must defeat the complainant's claim of title.

Several of the instructions which the counsel for the respondents prayed for, and which the presiding officer declined to give, in our opinion ought to have been given, which will appear by the remarks already made, without being specified numerically. For these, and several other reasons, apparent in the sheriff's statement, the court are of opinion that the verdict must be set aside, and the case be remanded to the county commissioners to issue a new warrant.

*Verdict set aside*